First of all, we got an order late last week concerning the timing of the filing of the Notice of Appeal, which, of course, looking back a year and nine months ago, there does seem to be a discrepancy between the date the notice was filed, which was January 2nd, and the actual stamped file date of January 5th. We, of course, tried to do as much research as we could upon receiving that notice so we could discuss it today. The research focused on the calendar, I assume. Yes. January 2nd was a Friday, and January 5th was a Monday. As best as we can reconstruct, using our joint memories at the office between my secretary and I, the document was signed on January 2nd, the Friday, right after the January 1st holiday. In fact, it was not a normal work day for us. We had scheduled to take January 2nd off to enjoy the fact that January 1st had fallen on a Thursday. Both of our memories are that we specifically came into the office to get this document signed and done, turned it over to the runner to be filed that day. Ever since then, having not noticed the file stamp date when it got returned, we have assumed it was filed on January 2nd. In our brief, we actually cite the January 5th date of its filing, obviously based off the document itself many months later when you prepare the brief. I'm certainly in the unenvied position of having to discuss this today because I'd certainly rather be discussing the merits of the case. And I'm going to suggest that that's where I'd like to spend the rest of my time. Obviously, the issue of the notice is something this body is going to have to deal with. But if I may, I would like to discuss what I think are the important merits of this case and why the district judge erred in making his decision. If we were to remand this for an evidentiary hearing, what would the runner say? The difficulty with – He's long since been fired. Not for this reason, obviously. But, yeah, things have changed substantially since that period of time. We've had a complete restructure of personnel and were unable to even locate the runner, who was at that time a temporary employee. He was actually someone we were assisting in reestablishing his life post-conviction where he had – He had done some paralegal work, and so we were trying to be helpful. I honestly can't explain what happened other than, you know, in the normal course of things, it was signed on the right date, it was turned over to the proper person on the right date to be filed that afternoon. Sympathetic though we may be with your good works, you would agree with us that this is a jurisdictional problem, wouldn't you? Yes, and I certainly have looked at the case law since receiving your information, and I'm, you know, quite aware of the circumstances and the situation, and would argue for the sake of using the proper terms that this creates a unique and unusual situation beyond just the ordinary staff issue in that we've come this far. It's a year and nine months later, and the matter has not been raised up until, you know, just the end of last week. Given that set of circumstances – How can you have the opportunity to find the runner? Excuse me? Never mind. Yes. Well – Courts are responsible for their own jurisdiction, as I'm sure you're aware. Yes. Which is why we attend to these matters. Yes. Assuming we have no jurisdiction, what do you propose that we should do? I propose you should hear this matter on its merits, given the unique set of circumstances this has brought us here today. Had this matter been raised at an earlier date, it could have been dealt with summarily, paperwork, but because everyone has prepared to be here today, there is no injury, there is no technical problem with one side not, you know, getting their justice. It is an important matter. My client is here present. She's traveled from Las Vegas to attend this hearing. Certainly it is our desire, having not, you know, up until the end of last week, it's been our desire to have this matter heard on the merits, and that's what I'm going to suggest you do. At the end of which, we might issue an advisory opinion in your favor, you would hope. Well, something at least in a footnote. May I continue? Surely. This case is – there's a difference of opinion as to what the meaning of the facts are in this case. And the difference in opinion is what the district court judge found when he evaluated the facts. And I think that's the essence of our argument, obviously, is the overstepped his bounds in determining what the facts meant or substantiated. Certainly it's not about a prima facie burden, because that was well met in this case. What we really have is a district court judge stepping in the role of the jury and saying that these are insignificant or not important or not the kind of things that I, as a prior of fact rather than a judge, would determine to be hostile. And I just – I just – To be hostile, it has to be – or the incidents have to be pervasive and severe. Yes. What we have in this case, and just – I mean, it seems to me like that's the heart of this, is whether there's a triable issue on account of the incidents which may have been unpleasant. I don't know what he's saying, but it's what she – what Snyder says happened particularly pleasant on a daily basis to walk into a restroom and find what she found. But even from her own take, it wasn't on account of the people in her own unit who seemed to get their act together after she complained. And the single incident of the supervisor walking in certainly isn't pervasive, never mind severe. I agree with that. So how do you come out saying that there's a triable issue? And I think that the question of whether it is pervasive in a prima facie way, it is. The testimony by my client is that on a daily basis – we're talking over a period of months – a daily basis that there's male urine on the toilet seat in the women-only bathroom. Now, let's just put that in perspective a little bit. You know, as I said, I don't – I'm not suggesting that that's a pleasant thing to experience. Right. On the other hand, there's nothing to indicate that it was somehow intentional. Well, I disagree. I think it is intentional, and this is where the – Her own unit. This is where the district court stepped in as the trier of fact, which I disagree with. It's very common knowledge that men who use restrooms either at home or in some public place where women and men are going to use the toilet that's down on the floor, not a have this kind of a problem. I take it you have no male children. These are not children. They were acting like children, sir, but they are not children. And that's the point of this. Urine doesn't end up on the toilet seat accidentally. And I know this is a little – I'm not suggesting – By men. That's not the accidental part. Well, that's why I'm saying it is intentional. What was going on here in a very base and primitive way was a group of men, and there's other testimony and other evidence in the case. They didn't want women firefighters. This goes back to women in police, women in the military, women in firefighting. Men don't want them. This is a boys club. So what were they doing in a very base and primitive way? They were marking their territory just like a dog does on the lamppost in front of my house. What's your evidence to get to the jury that this was intentionally done in order to drive her out of the fire department? You have to take it all in, the comments, the slurs, the daily harassment that women aren't part of the fire unit, that women aren't wanted. This was all in the evidence. And then you have to look at this particular situation. What a crude and rude way to say you're not wanted. This is a women's only bathroom. Men shouldn't even be going in there. It has a lock on the door. They break the lock, not accidentally. The lock gets broken. So they're invading the women's only territory intentionally. They're leaving urine on the toilet seat, which doesn't happen accidentally. The way I look at the record, that stopped with respect to her battalion at some point. Is that accurate? It was on and off. They would send out memos. They would say it's women's only. Then it would start up again. This was constant. It never actually went away. What's your evidence to show that the purpose that the supervisor walked into the restroom was to try to catch your client in a compromising situation? We don't know. Their statement was he went in on his routine inspection. Yeah, and we don't know. Obviously, he can testify to that. Our client could testify that, gee, what a coincidence. Obviously, that's something not for me. Pretty much you're arguing, looking at your case, in the light most favorable to the factual allegations, this was a situation where a bunch of male firefighters intending to drive your client out of her workplace deliberately urinated all over the toilet seat. Yes. Now, what if they urinated in her boots or on her bunk? That would be pretty sick, and we'd think that was an intentional way to drive her out. The fact they do it on the toilet seat is somehow forgiving? No. It's the same thing. This was intended to drive her out. It was crude, and it was very male, and it was very animalistic. It was very primitive. It's a marking of territory. You're a woman. This is my toilet seat. Here, sit here. Again, boots, bunk, somewhere else, we wouldn't even think twice about how offensive it was. They don't get away with it just because they chose the toilet seat. Thank you. Mr. McKenna, thank you. Ms. Jorgensen. Please, the Court. My name is Katherine Jorgensen. I'm here for Clark County. The issue that was raised by this Court in its order last week stated that there was concern whether or not this appeal had been timely filed, the notice of appeal. I submit to you today that it was not timely filed, and as such, because it is a jurisdictional question, that issue alone should dispose of this matter before the Court. The judgment from the district court was issued, entered, and filed on December 2nd, 2003. The 30 days ran would have been January 1st, 2004. However, that being a holiday, the next day would have been January 2nd, 2004, when it should have been filed. It was not filed until January 5th, 2004, which means it's outside of the 30-day time period. Is the Court open for business on January 2nd? Yes. How do you know that? It's my understanding it was open on January 2nd. What is the basis of your understanding? Because it was not a holiday, and I'm not aware of whether it was open or not. It was pretty bad weather in the city that day. Is that right? So your answer, yes, is just a guess. My answer, yes, is an educated guess that it would not have been closed. Maybe it's more like a prayer. Did you think that was an issue that should be known? Yes. Did you check to see whether the Court was open or not? No, I did not prior to this hearing. That was part of the reason we put out the notice, so that you all could look into this problem. He researched the calendar. You didn't research the Court, I guess. Your Honors, it's my understanding that the Court was open on January 2nd. I don't have any reason to believe that it was not. However, as you pointed out, it did not verify that it was not open on January 2nd. That means that it was open on January 2nd. What was the weather on January 2nd? I don't recall. That would have been an exceptional circumstance for the Court to have been closed that particular day, since it was not a holiday. And I would submit to you that that's something that I would have remembered and would have been aware of. But before you today, I cannot say that for sure. Who has the burden of proving the jurisdictional issue, you or? Well, it would be the plaintiff, the appellant. Because this is not something I raised in my brief, my appellee's brief, I believe that, well, this wasn't an issue that I considered until it was raised by the Court last week, and that's an oversight on my part. However, because it is a jurisdictional issue, the case law that I had a chance to review shows that it's jurisdictional and mandatory that it be filed within the 30-day time period, and that did not occur in this situation. Because it's not – even though I failed to raise it, that is – this issue isn't waived. When I was reviewing the rules, there are exceptions to when the court will allow a notice of appeal to be filed after the 30-day time period. However, in those – in the court rules, it allows for, if you file within 30 days after the time period that it's over or within 180 days, there's some different situations where that can occur, and that no motions were filed by the appellant in this case. Mr. McKenna argues that there is at least a triable issue raised on the merits on account of the fact that this was basically an invasion of a women's-only restroom, plus a disagreeable act. And combine all that with slurs and comments that it should have gone to a jury. What's your response to that? Your Honor, in this case, what was before the court were a few issues. One is whether Ms. Nygaard had failed to exhaust her administrative remedies. We're talking about the hostile – the questions about the hostile work environment. Regarding the hostile work environment, the only issue really before the court because of the failure to exhaust was the bathroom issue. And Ms. Nygaard in her complaint had listed a couple instances and then made a general statement that she found urine on the toilet seat on a daily basis. Well, if – if it were intentional, that is, if the guys who were doing it knew that it was a women's-only restroom and that that was one way that they knew they could just irritate the heck out of Ms. Nygaard to the point where she might feel sufficiently hostile that she'd have to quit, why doesn't that raise a triable issue? Well, the reason it doesn't raise a triable issue is the fact that this was a public restroom. And granted, it did have women's on the front of that. But her platoon was the only platoon where there was a woman in that particular building. And there's two other platoons that their shifts don't overlap with the shift that she's on. And there – it's my understanding that there were some men that used that restroom when the other one was – I assume the other one was being used. And so that did occur. It wasn't for the purpose of – of harassing Ms. Nygaard. It was the purpose of using the restroom in a – during a shift when she wasn't dressed. That's a jury argument, though. The question we have to look at is whether there was – there were sufficient facts alleged to establish a hostile work environment. And as counsel said, that this was a deliberate act by male firefighters, hostile, to drive a woman out of a place where they didn't think a woman ought to be. What were the facts that were alleged on the other side that would sustain a jury finding to that effect? The issue is – again, I go back to the fact that it was a public restroom. And whether there was urine on a toilet seat – you're going to have urine on a toilet seat in a public restroom, no matter if there's men using it or women using it. And by – by virtue of that fact, that alone, in my mind, cannot establish that there was a hostile work environment, because – That fact alone, but you're taking that out of context. What's the context? What were the things that were being said to her generally? How was she being treated? And doesn't it appear clear that she was an unwanted person there at that location? I don't – if you look at the complaint and at the EEOC charge, there isn't anything to indicate that she was being treated hostilely, other than some general statement that she was being treated – no. I don't even believe that was put in there. What facts were laid before the district court in support of these allegations to get past a motion for summary judgment? Was a declaration filed by – by her? Not that I'm aware of. Doesn't mean it wasn't. It simply means you're not aware of it. I mean, that's a – that's a typical lawyer answer. You don't know is your answer. Well, she did submit an affidavit with her in her motion in the response for the motion for summary judgment. What does that affidavit allege in terms of how she was being treated? It alleges that she was, I believe, if I remember correctly, being told that – well, what it pretty much can say, that she didn't belong there. That's correct. It started back from 1989 to the forward. If I could also point out to the Court that this was filed against Clark County,  or individual supervisor. And the plaintiff needs to show that there was a custom policy practice or something that was done by someone who was in a position to hold the county to that position. And all the allegations that were made in Ms. Nygaard's affidavit in the response to the motion for summary judgment, she – the first time that she brings it apparently to the attention of the county, per se, by bringing it to the attention of the captain, was, I believe, in 2001. So although she alleges that things were occurring since 1989 to the present, apparently she decided not to bring it to the attention of the county until that time. And as such, I don't believe that she's a stopped because she tried to put up with it? Well, yes. I mean, that happens in all of these cases. I mean, we've heard hundreds of these cases. Women and men both frequently don't do anything for a long period of time, hoping it will stop and go away. It finally gets to be too much, they file a lawsuit. Well – And that's what you argue to a jury. She really wasn't upset about this because she sat on her hands for years until she did something. Yes, but you also need to look at the EEOC complaint. And there's no specific allegations in the EEOC complaint that, other than the use of the bathroom, she doesn't state that – uses any of the harassing language that she alleges in her affidavit. She doesn't – Well, that's – now you're trying to impeach her with inconsistent statements or something from the EEOC. No, what I'm saying is the EEOC complaint, that is also jurisdictional. If she fails to raise those things in the EEOC complaint, then she's failed to exhaust her administrative remedies. And so to pull in all those other things that are unrelated to use of the bathroom – They're not unrelated. That's the whole point. They also relate to the use of the bathroom. And reflect on the intent of the people who were leaving urine on the toilet seat. The point – There are a lot of other charges that might fall away, but the only charge that remains is the one that was exhaustive, and that's this one. And we look at the evidence that was presented to the district court to see whether there's enough to get past summary judgment. In other words, whether there's enough to support a jury verdict or a fact finder verdict, should that come back in her favor? You're saying if we look at the affidavit, there's not going to be enough there? Yes. And, again, because the notice of appeal was not timely filed, I would recommend that it be dismissed on that – for that basis. Thank you. Anything else? Yes. Okay. Can I thank Judge Trott? He has a question for you. Yeah. Exactly what was submitted to the district court in support of your theory of the case that this was intentionally done to drive her out of the workplace? As was indicated, when we opposed the motion, we supplied an affidavit that talked about the various things. And that's in our excerpt of record where? It should be. I'm asking the question. Well, it was – actually, it was filed as an opposition to a motion to dismiss. It was originally a motion to dismiss, but then because they filed – Is it in the excerpt? The opposition to the motion to dismiss is in the excerpt. But I do not see an affidavit attached there, too. I think it's just discussed in the opposition because, again, it was a – See, there – well – It was a motion to dismiss rather than a motion to dismiss. Practice point. If you're going to be relying on something, that's the whole purpose of the excerpt. The brief is like your opening statement. We go to the excerpt to see where the proof is. So we want to look at that. Is that somewhere in the record, that affidavit, in the district court record? No. I can't say that it is because, again, this was approached as a motion to dismiss, treated as a motion for summary judgment. The affidavit is nowhere in the district court record. What you're going to have is the opposition to the motion to dismiss, which is in the excerpt, and there is no affidavit attached to it. Where can I find that? I'm saying there may not be an affidavit because it was treated as a motion to dismiss rather than a motion for summary judgment. So your whole case depends on an affidavit that's not in the record? Am I hearing you right? I'm saying that because it wasn't a motion for summary judgment, there was not any, there was no depositions, there was no testimony, and there may not have been an affidavit. I didn't think it shifted from a motion to dismiss to a motion for summary judgment. Basically, the judge did that because in their motion, they went outside the, you know, outside the pleadings. Did you object to that at all? We opposed, you know, in a general way. Okay. Thank you, counsel. The matter just argued will be submitted. The Court will stand recess for the day.
judges: Trott, Rymer, Plager